IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| SOUTHERN FARM BUREAU | : | |
| LIFE INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 3:19-CV-64 (CAR) |
| LORENNE CRISTEA AND | : | |
| LAURA SHAFER | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |
| LAURA SHAFER, | : | |
| | : | |
| Cross-Claim Plaintiff, | : | |
| v. | : | |
| | : | |
| LORENNE CRISTEA, | : | |
| | : | |
| Cross-Claim Defendant. | : | |
| | : | |
| _____ | : | |

**ORDER ON DEFENDANT/CROSS-CLAIM PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND MOTION FOR SUMMARY JUDGMENT**

On July 17, 2019, Southern Farm Bureau ("Farm Bureau") filed this interpleader

action asking the Court to determine the rightful beneficiary of a life insurance policy

taken out by the late John Cristea ("Decedent").[1] Decedent's ex-wife, Lorenne Cristea

(Defendant/Cross-Claim     Defendant),     and     their     daughter,     Laura     Shafer

_____

[1] [Doc. 1].

1

(Defendant/Cross-Claim Plaintiff), both claim to be the rightful beneficiaries to the life insurance policy. Currently before the Court are Defendant/Cross-Claim Plaintiff Shafer's Motion for Judgment on the Pleadings and Motion for Summary Judgment. Plaintiff/Cross-Claim Defendant Cristea, proceeding *pro se*, has responded to both Motions. For the following reasons, the Court **DENIES** Shafer's Motion for Summary Judgment [Doc. 31] and **DENIES AS MOOT** her Motion for Judgment on the Pleadings [Doc. 23]**.** Shafer is **DIRECTED** to **SHOW CAUSE** within 21 days of this Order why her cross-claims should not be dismissed[2] and judgment entered in favor of Cristea.[3]

## LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[4] Not all factual disputes render summary judgment inappropriate; only a genuine issue of

---

[2] Shafer also asserts several subsidiary claims, including intentional interference with an expectancy of an inheritance and tortious interference with a contractual relationship; however, she does not seek judgment on the pleadings or summary judgment for these claims. It appears these claims are without merit. It is unclear why the benefits of an insurance contract would constitute an inheritance, since they are outside of probate, as Shafer argues in her Motion for Judgment on the Pleadings. Additionally, it is unclear that Georgia even recognizes an intentional interference with an expectancy of an inheritance action. Finally, it appears Shafer cannot meet the elements of the tortious interference with a contractual relationship claim. *See Duke Galish, LLC v. Manton*, 291 Ga. App. 827, 832, 662 S.E.2d 880, 884 (2008).

[3] If Farm Bureau wishes to renew its motion for costs and attorneys' fees, it has **21 days** from the date of this Order to do so.

[4] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Case 3:19-cv-00064-CAR   Document 37   Filed 07/27/20   Page 3 of 12

material fact will defeat a properly supported motion for summary judgment.[5] This

means that summary judgment may be granted if there is insufficient evidence for a

reasonable jury to return a verdict for the nonmoving party or, in other words, if

reasonable minds could not differ as to the verdict.[6]

On summary judgment, the Court must view the evidence and all justifiable

inferences in the light most favorable to the nonmoving party; the Court may not make

credibility determinations or weigh the evidence.[7] The moving party "always bears the

initial responsibility of informing the court of the basis for its motion, and identifying

those portions of the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, which it believes demonstrate the absence of

a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[8] If

the moving party discharges this burden, the burden then shifts to the nonmoving party

to respond by setting forth specific evidence in the record and articulating the precise

manner in which that evidence creates a genuine issue of material fact or that the

moving party is not entitled to a judgment as a matter of law.[9] This evidence must

consist of more than mere conclusory allegations or legal conclusions.[10]

---

[5] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[6] *See id.* at 249-52.

[7] *See id.* at 254-55; *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[8] *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

[9] *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324-26.

[10] *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

3

Because Cristea did not dispute Shafer's Statement of Material Facts, "[a]ll material facts contained in the movant's statement which are not controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate."[11] However, the Court disregards any facts that are not material or are stated as issues or legal conclusions.

## BACKGROUND

Cristea and Decedent were married in Romania in 1977.[12] They had a daughter, Shafer. In 2009, Decedent took out a life insurance policy ("the Policy") with Farm Bureau for the sum of $500,000 naming Cristea the sole beneficiary.[13] The Policy states in relevant part that:

> 6.1    Successive—Beneficiaries - The policy proceeds will be paid to the Beneficiary or Beneficiaries upon the Insured's death. The policy proceeds will be paid in equal shares to the surviving Beneficiaries, unless otherwise provided. Payments will be made successively in the following order:
>
> (a) the Primary Beneficiary or Beneficiaries, if any; otherwise
>
> (b) the Contingent Beneficiary or Beneficiaries, if any; otherwise
>
> (c) the Owner or Owners, or the estate of the last surviving Owner.
>
> 6.2    Change of Beneficiary - If the right to change the Beneficiary has been reserved, You may change the Beneficiary during the Insured's lifetime by filing Written Notice to the Company. Upon recording at the Home Office, the change will be effective as of the date it was signed. We will not be responsible for any payment or other action taken by Us before

---

[11] L.R. 56.

[12] [Doc. 1-2 at 3].

[13] [Doc. 1 at 2-3; Doc. 1-1 at 18].

receipt of Written Notice to the Company.[14]

At the time the Policy was taken out, both Decedent and Cristea were residents of Georgia, and the contract was made in Georgia.[15]

On January 22, 2014, Decedent filed for divorce in Clermont County, Ohio.[16] At the time of the divorce, Cristea was still a resident of Georgia.[17] As part of the divorce, Cristea and Decedent entered into a settlement agreement (the "Separation Agreement"). The Separation Agreement contained the following relevant language:

> **LIFE INSURANCE:** The Parties shall retain those life insurance policies in their respective names, and any accumulated cash value, as their sole and exclusive property, free and clear of any interest of the other.

The Separation Agreement was incorporated by reference into the Ohio court's divorce decree, which was entered on January 21, 2014.[18]

On February 2, 2014, Decedent assigned the ownership of his life insurance policy to his daughter, Schafer, who was then known as Laura Stancea.[19] Decedent died on January 12, 2019, in Romania.[20] Neither Decedent nor his daughter, Shafer, removed Cristea as the named beneficiary on the Policy. No contingent beneficiary was listed on

---

[14] [Doc. 1-1 at 9].

[15] [Doc. 1-1 at 18].

[16] [Doc. 1 at 3; Doc. 1-1].

[17] [Docs. 19, 34].

[18] [Doc. 1-2 at 4,6].

[19] [Doc. 31-1; Doc. 1-1, Ownership Change Request].

[20] [Doc. 1 at 4].

the Policy; thus, if Cristea was not the named beneficiary, then the benefits of the Policy would proceed to the owner, Shafer.[21]

Shafer claims that by the terms of the Separation Agreement incorporated into the Divorce Decree and Ohio Revised Code Annotated Section 5815.33, Cristea should not be granted beneficiary status. Schafer further argues that, as owner of the Policy, she should be the sole beneficiary to the proceeds of the Policy. Cristea, on the other hand, claims she was the primary beneficiary on the Policy at the time of her ex-husband's death, and had been since 2009. She asserts that the Policy was made in Georgia while she and her ex-husband were both Georgia residents; she has never been a resident of Ohio; Ohio law does not apply to the Policy since it was made in Georgia; and the terms of the Separation Agreement were not intended to remove her as a beneficiary.[22]

**DISCUSSION**

Fundamentally, this case involves the interpretation of the plain terms of a contract according to applicable state law. Although two contracts made in two different states come into play in this case—the parties' Separation Agreement as incorporated into the Ohio Divorce Decree and the Georgia Insurance Policy—the Policy, as interpreted under Georgia law determines the rightful beneficiary.

---

[21] [Doc. 1 at 4; Doc. 1-1 at 9].
[22] [Docs. 19, 21, 34].

Because Ohio and Georgia contracts are at issue in this diversity action, the Court must determine which state's law should apply to these contracts. This Court applies the choice of law rules of the state in which the Court sits.[23] Georgia adheres to the traditional rule of *lex loci contractus*.[24] Under this approach, "contracts are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case ... the laws of that sister State will be applied...."[25] Georgia law does allow for an exception to this rule, "where a state has no substantial relationship to the parties or the transaction, or the result obtained from the applicability of the law of the chosen state would be contrary to Georgia's public policy."[26] And "[w]ith regard to insurance contracts, Georgia law provides that the last act essential to the completion of the contract is delivery; consequently, insurance contracts are considered made at the place where the contract is delivered."[27] Additionally, "Georgia courts have held that when insurance contracts made in Georgia lack a choice-

---

[23] *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020 (1941). ("In diversity actions, the substantive legal issues must be resolved by the forum state's conflict of law rules.").

[24] *Gen. Tel. Co. of Se. v. Trimm*, 252 Ga. 95, 95, 311 S.E.2d 460, 461 (1984) (answering a certified question from the Circuit court).

[25] *Id*. (citations and internal notations omitted).

[26] *Johnson v. Occidental Fire & Cas. Co. of N. Carolina*, 954 F.2d 1581, 1584 (11th Cir. 1992).

[27] *Id.* at 1583-84.

of-law provision, the parties are presumed to have intended their contract to be governed

by Georgia law."[28] There is no choice of law provision in the Policy.[29]

The parties do not dispute that the Separation Agreement was made in Ohio and

the Policy was made in Georgia.[30] Thus, under Georgia's principle of *lex loci contractus*,

the Separation Agreement is interpreted under Ohio law, and the Policy must be

interpreted under Georgia law.

Under Georgia law, "[e]ven in the event of a divorce decree and settlement

agreement, the beneficiary of an insurance policy generally remains the same until a

change of beneficiary is effected in accordance with the terms of the policy."[31] On the

other hand, if the insured has done "substantially all that is required" to change the

beneficiary under the terms of the contract and all that remains is "ministerial action" on

---

[28] *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998).

[29] [Doc. 1-2].

[30] Both Parties make arguments surrounding the divestiture statute in Ohio, Ohio Revised Code Annotated § 5815.33, but neither Party has cited case law that would require this Court to find an Ohio statute controlling over the plain terms of a contract made in Georgia, i.e., the Policy. Additionally, the Court has considered Shafer's argument regarding an exception to Georgia's *lex loci contractus* rule, but finds that exception to be inapplicable to this case. *See Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983) (finding where there is no foreign statute dispositive to the case, Georgia applies its common law).

[31] *See Hinkle v. Woolever,* 249 Ga. App. 249, 547 S.E.2d 782, 783 (2001); *see also Kruse v. Todd,* 260 Ga. 63, 389 S.E.2d 491 (1990); *Ward v. Phoenix Mut. Life Ins. Co.*, 201 Ga. App. 307, 307, 410 S.E.2d 795, 796 (1991); *Maxwell v. Britt*, 171 Ga. App. 230, 230–31, 319 S.E.2d 88, 89–90 (1984).

the part of the insurer, then the change in the beneficiary will be recognized.[32] However,

an "affirmative act" on the part of the insurer is required; "mere intention" is not

sufficient to change a beneficiary.[33]  Moreover, a beneficiary under Georgia law does not

have a vested interest in the life insurance proceeds until the death of the insured—and

even then, the claim is not against the insured, but the insurance company.[34]

Here, the terms of the Policy required Decedent or Shafer to file written notice to

Farm Bureau and record that notice to remove Cristea as a beneficiary. Because neither

was done, Cristea was not removed as the beneficiary. Under the terms of the Policy, as

well as Georgia law, Shafer or Decedent was required to take affirmative action to remove

Cristea as the beneficiary, such as sending the Divorce Decree and Separation Agreement

to Farm Bureau requesting *in writing* that Cristea be removed as a beneficiary. Although

Shafer asserts in her Cross-Claim Complaint that she "changed" the beneficiary status,

she has not claimed, either in the pleadings or in her Motions, that she filed the required

written request to change Cristea as the beneficiary with Farm Bureau. Nor has she

presented any evidence of a written request to Farm Bureau to change the beneficiary

status. Moreover, Farm Bureau has no record of any change.[35] Shafer further claims that

---

[32] *Henninger v. Standard Ins. Co.*, 332 F. App'x 557, 559–60 (11th Cir. 2009) (*citing Hinkle*, 249 Ga. App. at 783–84).

[33] *Id.*; *see also Prudential Ins. Co. of Am. v. Kopp*, 658 F. App'x 567–68 (11th Cir. 2016).

[34] *Kruse*, 260 Ga. at 67, 389 S.E.2d at 491 (1990).

[35] [Doc. 1 at 5].

it was Decedent's "intent" to change Cristea as the beneficiary.[36] However, it is simply

not enough to have an intent to change the beneficiary; Georgia law requires that the

insured proactively remove the named beneficiary or make substantial steps to do so.[37]

Neither Decedent nor Shafer took affirmative steps to remove Cristea from the Policy

despite almost five years passing from the time Shafer became the owner of the Policy to

the death of Decedent. Thus, Cristea was not divested of her beneficiary status under the

Policy as a matter of law.

Shafer argues that the Separation Agreement, not the plain terms of the Policy, is

controlling. Under the Separation Agreement, which was incorporated into the Ohio

Divorce Decree, "[t]he Parties shall retain those life insurance policies in their respective

names, and any accumulated cash value, as their sole and exclusive property, free and

clear of any interest of the other."[38] Schafer argues that this language divested Cristea of

her beneficiary status under the Policy, despite no additional action being taken on

Decedent's part.[39] In support of her argument, Shafer points to *Grzely v. Singer*,[40] an Ohio

Appellate Court case where the decedent specifically released "beneficiary rights" in any

insurance policy. The language in that agreement stated:

"Mutual Releases"— provides that "each party completely and forever

---

[36] [Doc. 31 at 6].

[37] *See Prudential*, 658 F. App'x at 567–68.

[38] [Doc. 8-1 at 3].

[39] [Doc. 31 at 5-6].

[40] 971 N.E.2d 481, 485 (Ohio App. 11 Dist. 2012)

releases the other from any and all rights each has, or may have * * * e) As beneficiary in any life, or other type of insurance policy issued to the other except as noted above."[41]

Unlike the language in *Grezly*, the Separation Agreement here did not specifically address beneficiary rights. Even if the Court assumes the terms of Separation Agreement were sufficient to divest Cristea of her beneficiary status under Ohio law, Shafer still has not demonstrated how or why the Separation Agreement would supersede the plain terms of the Policy under Georgia law. As discussed above, the plain terms of the Policy control, and thus Cristea remained the named beneficiary on the Policy.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Shafer's Motion for Summary Judgment [Doc. 31] and **DENIES AS MOOT** her Motion for Judgment on the Pleadings [Doc. 23]. Shafer is hereby **DIRECTED** to **SHOW CAUSE** within 21 days of this Order

---

[41] *Id.* at 485.

why her cross-claims should not be dismissed[42] and judgment entered in favor of

Cristea.[43]

SO ORDERED, this 27th day of July, 2020.


S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[42] Shafer also asserts several subsidiary claims, including intentional interference with an expectancy of an inheritance and tortious interference with a contractual relationship; however, she does not seek judgment on the pleadings for these claims or summary judgment. It appears these claims are without merit. It is unclear why the benefits of an insurance contract would constitute an inheritance, since they are outside of probate, as Shafer argues in her Motion for Judgment on the Pleadings. Additionally, it is unclear that Georgia even recognizes an intentional interference with an expectancy of an inheritance action. Moreover, it appears Shafer cannot meet the elements of the tortious interference with a contractual relationship claim. *See Duke Galish, LLC v. Manton*, 291 Ga. App. 827, 832, 662 S.E.2d 880, 884 (2008).

[43] If Farm Bureau wishes to renew its motion for costs and attorneys' fees, it has **21 days** from the date of this Order to do so.